UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DEVONTAE RONALD DIXON,

    Plaintiff,

v.     Case No. 3:22cv1455-MCR-HTC

SGT. BRYAN JONES, et al.,

    Defendants.
_____/

REPORT AND RECOMMENDATION

Plaintiff Devontae Dixon, a prisoner proceeding *pro se* and *in forma pauperis*, brings this excessive force suit under 42 U.S.C. § 1983 against five employees of the Florida Department of Corrections ("FDOC"). This matter is before the Court on Defendants' motion for summary judgment. ECF Doc. 37. Upon consideration of the motion, the evidence in the record, and Plaintiff's response, ECF Doc. 43, the undersigned recommends the motion be GRANTED and judgment be entered in favor of Defendants on all claims.

**I.     SUMMARY JUDGMENT STANDARD**

"The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual

dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law, and it is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* The Court must review the evidence, and all factual inferences reasonably drawn from the evidence, "in the light most favorable to the non-moving party." *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993) (citation omitted). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citation omitted).

## II. UNDISPUTED FACTS

Plaintiff sues Sergeant Bryan Jones, Captain Daniel Miller, Chief of Security Sandrika Davis, Officer Gregory Jones, and Captain Nickolas Johns for a June 25, 2021, incident that occurred while Plaintiff was a prisoner at the Blackwater River Correctional Facility ("Blackwater") in Milton, Florida.[1] ECF Doc. 1. The alleged excessive force occurred when Defendants dropped Plaintiff onto a concrete sidewalk as they transported him to the confinement/medical dorm via a four-man

---

[1] Plaintiff is currently incarcerated at Florida State Prison in Raiford, Florida.

Case No. 3:22cv1455-MCR-HTC

carry. *Id*. at 6. The crux of this dispute is whether Defendants intentionally dropped Plaintiff or whether, as Defendants contend, one of the officers (who is not a defendant to this action) simply lost his grip during the transport, resulting in all of the officers carrying Plaintiff, as well as Plaintiff himself, falling to the ground.

The following facts are taken primarily from Plaintiff's deposition testimony, ECF Doc. 37-9, and Declaration, ECF Doc. 43, and any relevant discrepancies from the video evidence or Defendants' declarations are noted.[2]

Sometime between 12:00 p.m. and 1:00 pm on June 25, Plaintiff was housed in Foxtrot/F-dorm, Wing 1, and was in the lunch area when non-party Officer Murphy instructed all inmates to have a seat at the table while she served them their lunch meal trays. Plaintiff Depo., at 8:4-22; Plaintiff Decl., at 2, ¶ 5. When Plaintiff got his tray, he refused to eat, handed the tray over to another inmate, and got up to leave the room. *Id*. at 8:20-22. Officer Murphy shouted after Plaintiff to go to the door (Plaintiff presumes it is because Murphy wanted Plaintiff to stay seated). *Id*. at 9:3-4. Officer Murphy then led Plaintiff to an adjacent hallway where she conducted a brief "pat search."[3] *Id*. at 9:4-6. After the search, Officer Murphy

---

[2] In support of their motion, Defendants have submitted their sworn declarations, Plaintiff's medical records, Plaintiff's deposition testimony, the FDOC incident reports, and videos of what occurred prior to, during, and after the transport. In opposition, Plaintiff relies on the complaint and his sworn declaration.

[3] Plaintiff's Declaration differs slightly from his deposition testimony as to this sequence of events. In his Declaration, Plaintiff states he left the lunch area, went to his cell, and Officer Murphy approached his cell and asked him to exit the wing. Once in the hallway she searched him and told him to stand facing the wall. Plaintiff Decl., at 2, ¶ 5. This difference, however, is immaterial.

ordered Plaintiff to face the wall with his hands behind his back. *Id*. at 9:12-13. Officer Murphy did not handcuff him. *Id.* at 10:21-25. Plaintiff complained to Murphy that "[he] ain't do nothing." *Id.* at 9:l-14.

Officer Murphy called for assistance, and another officer, Defendant Shift Captain Daniel Miller arrived to take control of Plaintiff. *Id.* at 9:l-15. Captain Miller handcuffed Plaintiff and told him, "You're going to jail."[4] Plaintiff Depo., at 11:17, 20. As Captain Miller tried to lead Plaintiff out, Plaintiff stood still, then dropped to the ground. *Id*. at 12:12-21. Plaintiff told Captain Miller he needed to be treated for a psychological emergency because he was not in the right state of mind. Plaintiff Decl. at 3, ¶ 6. Miller attempted to lift Plaintiff off the ground, but Plaintiff just laid "flat on his stomach" until other officers arrived to assist.[5] Plaintiff Depo., at 13:6-9. Shortly after, Defendants Sergeant Bryan Jones and Officer Gregory Jones arrived to assist Captain Miller. *Id*. at 13:10-15. The three officers eventually succeeded in getting Plaintiff off the ground and onto his feet. *Id*. at 14:7-9. However, despite Captain Miller's request for Plaintiff to "Walk. Walk. Come on, walk," Plaintiff wouldn't move his feet to walk or take any steps and, instead, told officers they would have to drag him. *Id*. at 14:15-21.

---

[4] According to Plaintiff, "jail" means the "confinement dorm." Plaintiff Depo., at 12:15.
[5] In his Declaration, Plaintiff contends Captain Miller used force to lift him but, in his deposition, he admits that up until he was dropped during the transport, he had not suffered any injuries from any of the officers' prior conduct. *Id.* at 21:9-12; Plaintiff Decl. at 3, ¶ 6.

Case No. 3:22cv1455-MCR-HTC

Upon exiting the dorm, the three officers were joined by Defendant Chief of Security Sandrika Davis, Defendant Captain Nickolas Johns, and nonparty Lieutenant Jason West. Plaintiff Decl., at 3, ¶ 7. Once outside the dorm, Plaintiff dropped his body to the ground again and laid there. Plaintiff Depo., at 15:1-3. At that point, another officer brought a wheelchair and Defendants put Plaintiff into the wheelchair and attempted to transport him that way. *Id*. at 16:4-5. But as Defendants tried to push the wheelchair, Plaintiff jumped out of the chair, got on the floor, and twisted up his legs up. *Id*. at 16:7-10; 19:6-8.

After Plaintiff jumped out of the wheelchair and fell back to the ground, the officers resorted to a four-man carry. *Id*. at 19:12-13. Defendant Chief Davis told four officers to each get one shoulder and each get one leg. *Id.* at 19:12-14; Plaintiff Decl., at 4, ¶ 8. Defendant Sergeant Bryan Jones secured Plaintiff by his left arm; Lieutenant West secured Plaintiff by his right arm; Defendant Officer Jones secured Plaintiff by his left leg, and non-party Officer Allred secured Plaintiff by his right leg.[6] ECF Doc. 37-4 at 1. Defendant Captain Miller walked in front of the escort; Defendant Captain Johns was behind the escort pushing the empty wheelchair; and Defendant Chief Davis was also following behind the escort. ECF Doc. 37 at 6.

---

[6] Plaintiff testified he thought Sergeant Jones had his left arm; Captain Johns had his right arm; Captain Miller had one leg and Officer Jones had the other leg. Plaintiff Depo., at 20:23-25. This likely explains why Plaintiff did not initially sue Officer Allred or Lieutenant West. However, at no time during this case did Plaintiff seek to name Allred or West as a defendant.

Case No. 3:22cv1455-MCR-HTC

After the four-man carry got underway, Plaintiff said, "Put me down. Put me down. I'm going to walk. I'm going to walk." Plaintiff Depo., at 19:23-25 to 20:l. Defendant Chief Davis responded, "No, no, no. You didn't want to walk before." *Id*. at 20:2-3. Plaintiff heard Defendant Chief Davis tell the officers "If he kick (sic) his feet, drop him on his face." *Id*. at 20:3-4. Chief Davis also tells Plaintiff that if he kicks his legs, the officers will drop him on his face. *Id.* at 21:14-16. Plaintiff continues to tell the officers he wants to walk and says, "I'm going to kick." *Id.* at 21:17-18. Defendant Davis replied that it was "too late" for Plaintiff to walk. *Id.* at 21:19. According to Plaintiff, at this point he "relaxed" and did not kick his feet. Plaintiff Decl. at 4, ¶ 8.

The carry team transported Plaintiff outside and through what is known as the "Center Gate." Plaintiff Depo., at 21-22. As they get around the corner, onto the straight path to medical, the officers lose their hold of Plaintiff, and they all drop to the ground. *Id.* at 21:21-24; Plaintiff Decl. at 4, ¶ 8. After Plaintiff and the officers fall to the ground, the officers pick Plaintiff up and tell him to walk. Plaintiff Depo., at 22:16-20. Plaintiff claims Chief Davis told him to walk or "we'll do it again." *Id.* at 23:11-14. Plaintiff complies this time and he and the officers walk to the confinement medical room without additional incident. *Id.* at 23:24-25; 24:8-11.

The officers take Plaintiff to medical, where a nurse treats him for a busted lip and puts a band-aid on his forehead. *Id.* at 25; 30. A mental health nurse also speaks

to Plaintiff and asks him if he is okay because Plaintiff is visibly angry and has an "attitude." *Id.* at 31. Plaintiff tells the mental health nurse he wants to go to the psych cell because he is suicidal, but she tells the officers Plaintiff was okay. *Id.* at 31, 33. At that point, Plaintiff is taken to the shower and when officers take the cuffs off Plaintiff, he turned around, "snatched backwards" and spit on one of the officers. *Id.* at 28-29, 33. Once inside the confinement cell, Plaintiff continues to yell out that he is suicidal. *Id.* at 29:8-17.

## III.   ANALYSIS

In Eighth Amendment excessive force claims, the "core judicial inquiry" is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37, (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). In determining whether force was applied maliciously and sadistically to cause harm, the court considers the following factors: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted upon the prisoner; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them; and (5) any efforts made to temper the severity of a forceful response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). Additionally, "an officer who is present at the

scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance." *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) (citations omitted); *see also Velazquez v. City of Hialeah*, 484 F.3d 1340, 1342 (11th Cir. 2007) (rejecting view that arrestee must specify the actions of each alleged participant in a collective beating).

As stated above, Plaintiff's excessive force claim hinges on whether Defendants intentionally dropped him or, as Defendants argue, simply lost their grip on him during the transport. Applying the *Whitley* factors here and considering the totality of the evidence, the Court finds a lack of more than a scintilla of evidence from which a reasonable jury could conclude that Defendants maliciously and sadistically dropped Plaintiff.

First, despite alleging in the complaint that Captain Davis gave the other officers orders to drop Plaintiff, when Plaintiff was asked in his deposition why he was dropped, he stated he did not know. Plaintiff Depo., at 22:5-13. Plaintiff testified all he knows is he was being carried up in the air one minute and once they got across the center gate and turned to go toward medical, he blacked out. *Id.* at 21:19-24. The mere fact that Plaintiff was dropped during the carry is not evidence of intentional conduct.

As Defendants argue, and as the video confirms, Officer Allred lost his grip on Plaintiff and as he moved to adjust, he stumbled, which resulted in a ripple effect, causing the other officers to fall, along with Plaintiff. ECF Doc. 37-12 (sealed video). While there is a dispute as to whether Officer Allred lost his grip because Plaintiff was kicking or squirming, that dispute is not material because Plaintiff offers no evidence to show that Officer Allred intentionally dropped him. In other words, even if Plaintiff was not squirming or kicking, as he alleges, Officer Allred could simply have lost his hold of Plaintiff during the carry. Plaintiff's argument that Defendants must have dropped him intentionally because Captain Davis told the officers to drop him if he kicked and he did not kick is, at best, pure conjecture, "relying wholly on circumstantial evidence mixed with speculation." *Ajibade v. Wilcher*, 2019 WL 1412115, at *9 (S.D. Ga. Mar. 28, 2019). Likewise, Plaintiff's allegation that, after the drop, Chief Davis told Plaintiff walk or he would get dropped again, even if true, also does not show Defendants acted with malicious or sadistic intent. *See Gwathney v. Warren*, 930 F. Supp. 2d 1313, 1319-20 (M.D. Ala. 2013) (granting summary judgment on excessive force claim in favor of defendant officer where only evidence that would "remotely support" a finding of malicious or sadistic conduct was a statement plaintiff contends was made by the officer and plaintiff's own characterization of the amount of force used, where plaintiff could

Case No. 3:22cv1455-MCR-HTC

not observe any expression or movement that would suggest the officer had any malicious motive in touching plaintiff on the shoulders).

Second, Defendants had no choice but to use a four-point carry to transport Plaintiff to confinement. By Plaintiff's own admission and as shown in the videos, Plaintiff refused to walk, dropping his body on the ground on at least three occasions. He also refused to ride in a wheelchair and, instead, "jumped out" and twisted his legs to prevent Defendants from being able to push him. Plaintiff admits Defendants asked him to walk and that he told them they would have to drag him. It was not until Defendants put Plaintiff in a four-point carry position that Plaintiff finally decided he wanted to walk, stating he was going to kick otherwise. Indeed, Plaintiff's uncooperative behavior started when he walked out of the lunch area without permission and continued until officers were finally able to put him into the confinement cell. Plaintiff admitted he was "angry," had an "attitude," was not in his right mind, and spit on officers.

Third, even after Officer Allred appears to have lost his grip on Plaintiff, the other officers tried to maintain their hold of Plaintiff and fell along with him. *See* ECF Doc. 37-12 (SEALED) at 0:17-24. By attempting to maintain their hold of Plaintiff, Defendants were able to soften Plaintiff's fall to the ground. Indeed, in attempting to maintain their hold of Plaintiff, one member of the carry team was also

injured in the fall. *See* Jason West Injury Report (June 25, 2021), ECF Doc. 37-14; Jason West Use of Force Incident Report (June 25, 2021), ECF Doc. 37-15.

Finally, Plaintiff was only minimally injured during the fall. After the fall, Plaintiff was examined by medical staff. ECF Doc. 37-8. A contusion was noted above Plaintiff's left eye and abrasions were noted on Plaintiff's left cheek, right eyebrow, chin, and upper lip. *Id*. at 1. "No bleeding" was observed. *Id*. Plaintiff was treated with gauze and a bandage. Those injuries militate against a finding of excessive force. *See Smith v. Sec'y, Dep't of Corr.*, 524 F. App'x 511, 513-14 (11th Cir. 2013) (per curiam) (affirming summary judgment in favor of defendant on finding a *de minimis* use of force where "record supports the finding that [plaintiff] suffered only the minor injury of facial swelling as a result of the incident"); *Vicks v. Knight*, 380 F. App'x 847, 852 (11th Cir. 2010) (per curiam) (affirming judgment on excessive force claim where reasonable jury would not find that plaintiff suffered more than *de minimis* injury). And, even if Plaintiff's complaints of migraines are a more than *de minimis* injury, that alone would not weigh in favor of a finding of excessive force given the lack of evidence to support the other *Whitley* factors.

Finally, while in some excessive force cases the conflicting testimony of the prisoner and the correctional officers will be enough to defeat summary judgment, this is not one of those cases. None of the conflicts here support a finding that Defendants acted with malicious or sadistic intent. Even when viewing the evidence

in the light most favorable to Plaintiff, Plaintiff has presented, at best, a scintilla of evidence to show that Defendants' conduct was sadistic and malicious. However "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). And, because the undersigned finds that no excessive force was used, Defendants are also entitled to summary judgment on Plaintiff's failure-to-intervene claims. *Sebastian v. Ortiz*, 918 F.3d 1301, 1312 (11th Cir. 2019). Accordingly, Defendants are entitled to judgment as a matter of law on Plaintiff's Eighth Amendment claims.

## IV.   CONCLUSION

Accordingly, it is respectfully RECOMMENDED that:

1.   Defendants' motion for summary judgment, ECF Doc. 37, be GRANTED on all claims.

2.   The clerk be directed to close this file.

At Pensacola, Florida, this 19th day of January 2023.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1.